**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal No.: 3:17-cr-01143-JMC-1 |
| | ) | |
| v. | ) | |
| | ) | |
| Willie Joe Goodwin, II, | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court for review are Defendant Willie Joe Goodwin, II's ("Defendant")
objections to the Presentence Investigation Report ("PSR") filed on September 13, 2018.  (ECF
No. 39.)  The court sustains Defendant's first objection and orders the United States Probation
Office to submit a new offense level computation and sentencing recommendation in accordance
with this Order and Opinion.

## I. INTRODUCTION

On March 14, 2018, Defendant pleaded guilty to possession with intent to distribute
cocaine base.  (ECF Nos. 34, 36.)  On September 13, 2018, the PSR was filed.  (ECF No. 39.)
Defendant "objects to the [PSR]'s conclusion . . . that [he] is a career offender based on [his two
South Carolina] convictions" for Possession with Intent to Distribute Marijuana.  (ECF No. 39-2
at 1; ECF No. 39 at 9 ¶ 29, 11 ¶ 31.)  For both of these convictions, Defendant "pled guilty as
indicted" on June 13, 2002.  (ECF No. 39 at 9 ¶ 29, 11 ¶ 31.)  Based on these prior felony
convictions, the PSR set Defendant's base offense level at thirty-four (34), finding that,

> [s]ince the instant offense[s] involved controlled substances and the [D]efendant
> was 18 years old at the time of [their] commission, the [D]efendant is a Career

1

Offender within the meaning of [United States Sentencing Guideline ("U.S.S.G.")] § 4B1.1.

(ECF No. 39 at 39 ¶ 104.)  The PSR recommends Defendant's "Total Offense Level" is thirty-one (31) after applying reductions for accepting responsibility.  (*Id.* at 39 ¶¶ 105–07.)  Finally, the PSR concludes that, "With a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 to 235 months." (*Id.* at 42 ¶ 124.)

Under section 4B1.1 of the United States Sentencing Guidelines ("Guidelines"), a defendant's base offense level is enhanced if he is a "career offender."

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) *the instant offense of conviction is a felony that is* either a crime of violence or *a controlled substance offense*; and (3) *the defendant has at least two prior felony convictions of* either a crime of violence or *a controlled substance offense*.

U.S.S.G. § 4B1.1(a) (emphasis added).  A "controlled substance offense" is defined under the Guidelines as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).  The commentary to U.S.S.G. § 4B1.2 further defines a controlled substance as including the offenses of "aiding and abetting, conspiring, and attempting to commit" the above offenses.  *Id.* at cmt. 1.

When determining whether a prior state conviction qualifies as a "controlled substance offense" under the Guidelines, the court "approach[es] the issue categorically, looking 'only to the fact of conviction and the statutory definition of the prior offense.'"  *United States v. Cabrera–Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (quoting *Taylor v. United States*, 495 U.S. 575, 602, (1990)); *McNeill v. United States*, 563 U.S. 816, 820 (2011) ("The only way to answer

2

this backward-looking question is to consult the law that applied at the time of that conviction."). "The categorical approach focuses on the *elements* of the prior offense rather than the *conduct* underlying the conviction." *Id.* To apply the categorical approach, the court "compar[es] the elements of the underlying offense to the federal definition." *United States v. Walker*, 858 F.3d 196, 198 (4th Cir. 2017). *See also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) ("The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime. The court then lines up that crime's elements alongside those of the generic offense and sees if they match."). If the elements of the underlying offense "sweep[] more broadly" than the federal definition, "a conviction under that law cannot count" as a controlled substance offense. *Descamps v. United States*, 570 U.S. 254, 261 (2013).

At the time Defendant was sentenced, section 44-53-370(a) of the South Carolina Code Ann. (2002) provided,

(a) Except as authorized by this article it shall be unlawful for any person:

(1) to manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue.

When faced with a statute like this, the sentencing court must first determine whether the statute is "divisible" or "indivisible." A divisible statute "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. An indivisible statute "creates an implied list of every means of commission that otherwise fits the definition of a given crime." *United States v. Hemingway*, 734 F.3d 323, 334 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 271). Put another way,

The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.

*Mathis*, 136 S. Ct. at 2256 (citation omitted). Thus, if the statute lists *means*, or is *indivisible*, the categorical approach applies. But, if the statute list *elements*, and is *divisible*, the modified categorical approach applies. *See United States v. Vinson*, 794 F.3d 418, 430 (4th Cir. 2015) ("Because the offense is divisible, the modified categorical approach is applicable."); *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) ("After *Descamps*, we may apply the modified categorical approach only if the state crime at issue is divisible."); *United States v. Marshall*, No. 16-4594, 2018 WL 4150855, at *8 (4th Cir. Aug. 29, 2018) ("When a state statute is 'divisible,' however, we apply the modified categorical approach, which enables us to compare the elements of the state and federal generic offenses."). If "the statute is 'divisible'— *i.e.*, comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for" a version of the crime that meets the federal definition, and therefore, qualifies for a sentencing enhancement. *Descamps*, 570 U.S. at 262. Under the modified categorical approach, "the sentencing court may . . . consult certain approved 'extra-statutory materials . . . to determine which statutory phrase was the basis for the conviction." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 256). However, "As the Supreme Court emphasized . . . the modified categorical approach, 'serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative,

renders opaque which element played a part in the defendant's conviction.'" *Id.* (quoting *Descamps*, 570 U.S. at 260).

Defendant argues that because section 44-53-370(a)(1) can be violated by *purchasing* marijuana, it "does not meet the guideline definition of a controlled substance offense, as defined by U.S.S.G. § 4B1.2(b)." (ECF No. 39-2 at 1.) Defendant contends the South Carolina statute is not divisible under *Mathis* because the statute "set[s] out a single crime, a drug violation, that can be committed a number of different ways." (*Id.* at 2.) Thus, Defendant asserts, and the Government agrees, that under the categorical approach, section 44-53-370(a)(1) is broader than the federal definition because it prohibits *purchasing* a controlled substance, while the federal definition prohibits the "manufacture, import, export distribution or dispensing of a controlled substance[ . . .] or the possession of a controlled substance . . . with the intent to manufacture, import, export, distribute, or dispense." (*Id.*; ECF No. 45 at 2.)

Alternatively, Defendant argues that even if the court finds the modified categorical approach applies, the court should not rely on sentencing sheets to determine whether the offense Defendant pleaded guilty to meets the federal definition for a controlled substance offense. (*Id.* at 3.) Defendant asserts that his sentencing sheets refer to (1) the statute of conviction—section 44-53-370—and (2) indicate both that Defendant pleaded guilty to Possession with Intent to Distribute Marijuana and pleaded guilty "as indicted." (*Id.*) The indictments Defendant pleaded guilty to mirrored the language of S.C. Code Ann. § 44-53-370(a)(1). (ECF No. 39 at 9 ¶ 29, 11 ¶ 31.) Thus, Defendant argues that under the rule of lenity, the court should solve this ambiguity in his favor. (ECF No. 39-2 at 4 ¶ 1.)

The Government and the PSR assert that S.C. Code Ann. § 44-53-370 is divisible, and therefore, the modified categorical approach applies. (ECF No. 39-2 at 3–6; ECF No. 45 at 1–7.)

They rely on the Fourth Circuit's unpublished opinions in *United States v. Vinson*, 340 F. App'x 882, 883 (4th Cir. 2009) ("Vinson claims that because the South Carolina statute under which he was convicted also criminalizes the purchase of drugs, the district court needs to look beyond the statute to evaluate Vinson's conduct. We disagree."); *United States v. Marshall*, No. 16-4594, 2018 WL 4150855, at *8 (4th Cir. Aug. 29, 2018) ("[W]e conclude that South Carolina Code §§ 44-53-370 and 445 set forth alternative elements, and that, therefore, the statutes are subject to review under the modified categorical approach."); *United States v. Rhodes*, 736 F. App'x 375, 379 (4th Cir. 2018) (assuming for purposes of the appeal that S.C. Code Ann. § 44-53-445(A) (2003) is divisible); and *United States v. Sulton*, 740 F. App'x 45, 46 (4th Cir. 2018) ("We conclude that [South Carolina Code § 44-53-375(B)] is divisible because, on its face, it criminalizes multiple, different actions taken with respect to methamphetamine, and nothing in the statutory text states or suggests that the enumerated actions are alternative ways to commit an element of a single offense rather than alternative offenses."); and the Fifth Circuit's decision in *United States v. Rodriguez-Negrete*, 772 F.3d 221, 225–27 (5th Cir. 2014) (applying the modified categorical approach to 44-53-370(a)(1)). (*Id.*)

In a responsive, supplemental sentencing memorandum, Defendant notes that in *Rhodes* and *Marshall*, the appellants' indictments listed all of the potential ways of violating S.C. Code Ann. §§ 44-53-445 and 370, which is also true of the indictments to which Defendant pleaded guilty. (ECF No. 46 at 6; ECF No. 39 at 9 ¶ 29, 11 ¶ 31 (PSR quoting the indictments for Possession with Intent to Distribute Marijuana that Defendant pleaded guilty to, which listed all of the statutory alternatives under S.C. Code Ann. § 44-53-370 (a)(1)).) *See also Rhodes*, 736 F. App'x at 380 (quoting the PSR which quotes the indictment listing all of the statutory alternatives under S.C. Code Ann. § 44-53-445(A) (2003)); Reply Brief of Appellant at 15,

*United States v. Marshall*, No. 16-4594, 2018 WL 4150855 (4th Cir. Aug. 29, 2018) (stating that according to the PSR, the indictments for both of Marshall's Possession with Intent to Distribute convictions listed all of the statutory alternatives). Defendant also notes that jury instructions for possession with intent to distribute under S.C. Code Ann. § 44-53-370(b)(1)–(3) that were available on the South Carolina Supreme Court's website in 2016—but have since been removed—listed all of the statutory alternatives. (ECF No. 46 at 7.)

Additionally, Defendant asserts, "South Carolina's highest state court has explicitly held that trafficking, and similarly-worded drug statutes, list alternative means by which a drug crime can be committed in South Carolina, not separate elements." (*Id.* at 12 (citing *State v. Raffaldt*, 456 S.E.2d 390, 394 (S.C. 1995), *State v. Harden*, 602 S.E.2d 48, 50 (S.C. 2004), and *State v. Gordon*, No. 2004-MO-044, 2004 WL 6396012 (S.C. Aug. 16, 2004)).) Finally, Defendant argues that if the statute is divisible, indictments that list all of the statutory alternatives under S.C. Code Ann. § 44-53-370(a)(1) are duplicitous, in violation of both South Carolina law and the United States Constitution. (*Id.* at 12–13.)

## II. ANALYSIS

### A. <u>Divisibility of S.C. Code Ann. § 44-53-370(a)(1) (2002)</u>

To determine whether the actions listed in an alternatively phrased statute, like section 44-53-380(a)(1), are elements or means, the Supreme Court directs sentencing courts to consider state court decisions and the statute itself. *Mathis*, 136 S. Ct. at 2256. Specifically, the *Mathis* Court instructs sentencing courts to consider whether the "statutory alternatives carry different punishments," or whether the statute "identif[ies] which things must be charged." *Id.* "[I]f state law fails to provide clear answers," *Mathis* authorizes federal judges to look to "the record of a prior conviction itself," namely the indictment and the jury instructions. *Id. See id.* at 2257

("Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").

Keeping with *Mathis*, this court must first determine whether section 44-53-370(a)(1) lists elements or means. The language and structure of section 44-53-370(a)(1), and several decisions of the South Carolina Supreme Court and Court of Appeals, lead the court to conclude that the "numerous forms of conduct" listed in section 44-53-370(a)(1) are means as opposed to elements. *State v. Miles*, 805 S.E.2d 204, 208 (S.C. Ct. App. 2017) ("Section 44-53-370 is concerned with criminalizing numerous forms of conduct involving illegal drugs.").

Initially, the court finds section 44-53-370(a)(1) is at least divisible by three. In *State v. Brown*, the appellant was convicted of "possession with intent to distribute crack cocaine, possession with intent to distribute crack cocaine within proximity of a school, distribution of crack cocaine, and distribution of crack cocaine within proximity of a school." 461 S.E.2d 828, 829 (S.C. Ct. App. 1995). The South Carolina Court of Appeals found distribution and possession with intent to distribute were different crimes stating, "We wish to emphasize that there is no prohibition against the contemporaneous prosecution by the State for both possession with intent to distribute and distribution of crack cocaine and the related school charges where, like this case, they arise out of the same conduct." *Id.* at 832. *See also id.* at 831 ("In South Carolina, the *offenses* of distribution of crack cocaine and possession of crack cocaine with the intent to distribute are statutory *crimes*, found in S.C. Code Ann. Section 44–53–375(B) (Supp. 1994)." (emphasis added)). Although the court was discussing a different statute—section 44-53-375, as opposed to section 44-53-370—the South Carolina Supreme Court in *Carter v. State* explained that section 44-53-375 defines an enhanced punishment for a violation of section 44-

53-370. *See* 495 S.E.2d 773, 777 (S.C. 1998) ("Section 44-53-375 provides a violation of § 44-53-370 that involves methamphetamine (crank) carries a greater sentence than the sentence provided for in § 44-53-370 for other Schedule II drugs. Therefore, § 44-53-375 does not define a separate crime but only an enhanced punishment."). Additionally, section 44-53-370(e) of the South Carolina Code Ann. (2002), which prohibits drug trafficking, states, "The offense of possession with intent to distribute described in Section 44-53-370(a) is a lesser included offense to the offenses of trafficking based upon possession described in this subsection." This statement further supports the conclusion that section 44-53-370(a)(1) is at least divisible by three, as possession with intent to distribute is the only action from section 44-53-370(a)(1) that is listed as a lesser included offense of trafficking. *See also Marshall*, 2018 WL 4150855, at *8 ("Courts in South Carolina treat the purchase of a controlled substance as a distinct crime from possession with intent to distribute under Section 44-53-370."); *State v. Watson*, No. 2013-UP-312, 2013 WL 8538756, at *2 (S.C. Ct. App. July 3, 2013) ("South Carolina law regards simple possession as a lesser-included offense of PWID[, possession with intent to distribute,] heroin but not of purchasing heroin. By requiring the jury to address PWID heroin and purchasing heroin separately, the trial court ensured the jury (1) understood the lesser-included relationship existed only between simple possession and PWID heroin and (2) examined the evidence of purchasing heroin separately.").

As to conspiracy under section 44-53-370(a)(1), in *Harden v. State*, the South Carolina Supreme Court explained, "Conspiracy is a separate offense from the substantive offense, which is the object of the conspiracy. A defendant may be separately indicted and convicted of both the conspiracy, and the substantive offenses committed in the course of the conspiracy." 602 S.E.2d 48, 50 (S.C. 2004). Also, conspiracy under section 44-53-370(a)(1) carries a different

punishment than the other two crimes. At the time of Defendant's conviction, section 44-53-420 of the South Carolina Code Ann. (2002) provided that,

> Any person who attempts or conspires to commit an offense made unlawful by the provisions of this article shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted; but the fine or imprisonment shall not exceed one half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

*See also State v. Fowler*, 289 S.E.2d 412, 413 (S.C. 1982) ("[Under S.C. Code Ann. § 44-53-420,] [t]he maximum sentence for conspiracy to commit a drug offense is one-half of the maximum punishment for the offense which was the object of the conspiracy.").

Additionally, the court notes that section 44-53-370(a)(1) repeats the terms "manufacture, distribute, dispense, deliver, [and] purchase," which is significant because as the statute repeats these terms, it modifies them with different phrases. The second repetition of these terms is modified by the words "aid, abet, attempt, or conspire to." S.C. Code Ann. § 44-53-370(a)(1) (2002). The third repetition of the terms is modified by the phrase "possess with intent to." *Id.* "[A]id, abet, attempt, or conspire to" and "possess with intent to" must be modifications because if they are not read in conjunction with the terms "manufacture, distribute, dispense, deliver, [and] purchase," parts of the statute would be nonsensical. For example, if "aid" stood alone, the statute would make it unlawful to "aid . . . a controlled substance or a controlled substance analog." *Id.* The same would be true if "aid, abet, attempt, or conspire to" are read together, but not as modifiers; in that case, the statute would make it unlawful to "aid, abet, attempt, or conspire to . . . a controlled substance or a controlled substance analog." *Id.* As these readings of the statute make no sense, "aid, abet, attempt, or conspire to" and "possess with intent to" must modify the terms "manufacture, distribute, dispense, deliver, [and] purchase." *See Lancaster Cty. Bar Ass'n v. S.C. Comm'n on Indigent Def.*, 670 S.E.2d 371, 373 (S.C. 2008) ("In

construing a statute, this [c]ourt will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature."). These structural features strongly suggest that manufacturing, distributing, dispensing, delivering, or purchasing a controlled substance is distinct from aiding, abetting, attempting or conspiring to manufacture, distribute, dispense, deliver, or purchase a controlled substance.

Accordingly, the court finds section 44-53-370 defines at least three different crimes: (1) the "manufacture, distribute, dispense, deliver, [and] purchase . . . [of a] controlled substance or a controlled substance analogue"; (2) "aid[ing], abet[ting], attempt[ing], or conspire[ing] to manufacture, distribute, dispense, deliver, or purchase . . . a controlled substance or a controlled substance analogue"; and (3) "possess[ion] with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue."

### a. Divisibility of Manufacture, Distribute, Dispense, Deliver, and Purchase

Therefore, having concluded that section 44-53-370(a)(1) defines at least three different crimes, the court considers the issue raised by Defendant's objection: whether manufacture, distribute, dispense, deliver, and purchase are *elements* or *means*. *See United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, a crime of violence.").

To make this determination, the court, following *Mathis*, first looks to whether the statutory alternatives carry different punishments. *See* 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi*[*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements."). The statutory alternatives listed in section 44-53-370(a)(1) do

not carry different punishments; nowhere in the statute is there a variance in sentence based upon whether a person manufactures, distributes, dispenses, delivers, or purchases a controlled substance. *See* S.C. Code Ann. § 44-53-370(a)(1) (2002). What affects a person's sentence under section 44-53-370(a)(1) is the *type* of drugs. *See Carter*, 495 S.E.2d at 777 ("Section 44-53-375 provides a violation of § 44-53-370 that involves methamphetamine (crank) carries a greater sentence than the sentence provided for in § 44-53-370 for other Schedule II drugs. Therefore, § 44-53-375 does not define a separate crime but only an enhanced punishment."). For example, under section 44-53-370(b)(1),

> A person who violates subsection (a) with respect to . . . a controlled substance in *Schedule I (b) and (c) which is a narcotic drug or lysergic acid diethylamide (LSD) and in Schedule II which is a narcotic drug is guilty of a felony* and, upon conviction, for a first offense must be *imprisoned not more than fifteen years or fined not more than twenty-five thousand dollars*, or both.

(emphasis added). But, under section 44-53-370(b)(2),

> A person who violates subsection (a) with respect to . . . *any other controlled substance classified in Schedule I, II, or III, flunitrazepam or a controlled substance analogue, is guilty of a felony* and, upon conviction, for a first offense must be *imprisoned not more than five years or fined not more than five thousand dollars*, or both.

(emphasis added). Then, under section 44-53-370(b)(3),

> A person who violates subsection (a) with respect to . . . *a substance classified in Schedule IV except for flunitrazepam is guilty of a misdemeanor* and, upon conviction, for a first offense must be *imprisoned not more than three years or fined not more than three thousand dollars*, or both.

(emphasis added). Finally, under section 44-53-370(b)(4),

> A person who violates subsection (a) with respect to . . . a *substance classified in Schedule V is guilty of a misdemeanor* and, upon conviction, for a first offense must be *imprisoned not more than one year or fined not more than one thousand dollars*, or both.

(emphasis added). Thus, under section 44-53-370(a) and (b)(1), a person who manufactures a Schedule I (b) substance is subject to the same punishment as someone who purchases a Schedule I (b) substance, which indicates that under section 44-53-370(a)(1), manufacture, distribute, dispense, deliver, and purchase are means, not elements. *See Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.")

However, in addition to considering the "statute on its face," the *Mathis* Court also directed sentencing courts to consider state court decisions. *See* 136 S. Ct. at 2256 ("The listed premises in Iowa's burglary law, the State Supreme Court held, are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. When a ruling of that kind exists, a sentencing judge need only follow what it says." (citation omitted)). Unfortunately, there is no "ruling of that kind" from the South Carolina courts on whether manufacture, distribute, dispense, deliver, and purchase under section 44-53-370 are means or elements. But there are several decisions, perhaps of a different kind, that do provide the court with a clear enough answer.

The most direct evidence from the South Carolina courts that under section 44-53-370 manufacture, distribute, dispense, deliver, and purchase are means and not elements, comes from the South Carolina Supreme Court in *State v. Raffaldt*, 456 S.E.2d 390, 394 (S.C. 1995). In describing the jury instructions requested by Appellant Raffaldt at trial, the South Carolina Supreme Court observed that, "[T]he charges requested by Raffaldt relate to *the various ways to commit distribution and possession*." *Raffaldt*, 456 S.E.2d at 394 (emphasis added) (citing S.C. Code Ann. § 44–53–370(a) and (d)(3) (1985 and Supp. 1993)). Thus, according to this statement in *Raffaldt*, 44-53-370(a)(1) defines different *ways* or *means*, as opposed to elements. *Id.*

13

Furthermore, in *Harden v. State*, the South Carolina Supreme Court held, "Trafficking may be accomplished by *several means*, including conspiracy." 602 S.E.2d 48, 50 (S.C. 2004) (emphasis added). *See also State v. Ezell*, 468 S.E.2d 679, 681 (S.C. Ct. App. 1996) ("[T]rafficking in crack cocaine may be accomplished by a variety of criminal acts, including the knowing possession of a certain quantity of the drug, under § 44-53-375(C)."). Of course, at issue in *Harden* are the South Carolina drug trafficking statutes, not section 44-53-470(a)(1), which is at issue in this case. However, these statutes are undeniably closely related in both language and purpose. In *Raffaldt*, the South Carolina Supreme Court stated that what distinguishes section 44-53-370 from the trafficking statute is the amount of drugs, not the criminal act: "It is the amount of cocaine, rather than the criminal act, which triggers the trafficking statute, and distinguishes trafficking from distribution and simple possession." 456 S.E.2d at 394. Moreover, the South Carolina Supreme Court has affirmed numerous times that "it is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Fullbright v. Spinnaker Resorts, Inc.*, 802 S.E.2d 794, 798 (S.C. 2017), *reh'g denied* (Aug. 22, 2017) (quoting *Beaufort County v. S.C. State Election Comm'n*, 718 S.E.2d 432, 435 (S.C. 2011)). Accordingly, the findings by the South Carolina Supreme Court in *Harden* and the South Carolina Court of Appeals in *Ezell*, that the trafficking statute lists several means—as opposed to elements or distinct crimes—provide further weight to the conclusion that manufacture, distribute, dispense, deliver, and purchase are means and not elements under section 44-53-370.

The court notes that based on decisions of the South Carolina Supreme Court, under section 44-53-370, "manufactur[ing]" controlled substances may stand alone from "distribut[ing], dispens[ing], deliver[ing], [and] purchas[ing]" controlled substances. For

example, in *Carter v. State*, the South Carolina Supreme Court found, "While the caption of this indictment refers to § 44-53-370, the plain language of the body of the indictment clearly notifies respondent that he is charged with manufacturing methamphetamine." 495 S.E.2d at 777 (S.C. 1998). Four years later in *State v. Walker*, the South Carolina Supreme Court held,

> Evidence sufficient to sustain a conviction for manufacturing marijuana may not always be sufficient to sustain a conviction for cultivating marijuana on the lands of another, even where there is no dispute the property belonged to someone other than the defendant. The manufacturing statute, S.C. Code Ann. § 44–53–370(a)(1) . . . when read in conjunction with the definitional statute, S.C. Code Ann. § 44–53–110 . . ., and *State v. Austin*, . . . 279 S.E.2d 374, 375 (1981), equates the act of "harvesting" with the offense of "manufacturing." The code, however, does not equate "harvesting" with "cultivating."

562 S.E.2d 313, 314 n.2 (2002). *See also Austin*, 279 S.E.2d at 375 ("Appellant questions the clarity and sufficiency of Section 44-53-370 in specifying the crime of 'manufacture.' Basically, South Carolina has adopted the Uniform Controlled Substances Act in Chapter 53 of Title 44, Code of Laws of South Carolina, 1976. In the definitional portion of the Act, Section 44-53-110, the terms 'manufacture' and 'production' are used interchangeably to denote the acts of 'planting, cultivation, growing or harvesting of a controlled substance.' We find nothing uncertain about either this statutory language or its application to the facts of this case.") However, resolving Defendant's objections does not require the court to determine whether manufacturing controlled substances is a separate crime from distributing, dispensing, delivering, and purchasing controlled substances because Defendant was convicted of Possession with Intent to Distribute Marijuana. (*See* ECF No. 39-2 at 1; ECF No. 39 at 9 ¶ 29, 11 ¶ 31.)

## B. Decisions from the Fourth Circuit

At this point, the court has inquired enough. In answering the means/elements question, *Mathis* does authorize sentencing courts to look beyond the statute and state court decisions to "the record of a prior conviction itself," namely the indictment and jury instructions. 136 S. Ct.

at 2256–57. However, *Mathis* holds this is only appropriate "if state law fails to provide clear answers." *Id.* *See also United States v. Diaz*, 865 F.3d 168, 177 (4th Cir. 2017) ("The government argues that under *Mathis* . . . we should 'peek at the record' to determine whether the statute is divisible. However, the Supreme Court only recommends this in the absence of 'clear answers' from case law and other sources." (citing *Mathis*, 136 S. Ct. at 2256)). The court finds that the South Carolina drug statutes and South Carolina case law "create sufficient consensus for [the court] to find the 'clear answer,'" without peeking at the record of Defendant's prior conviction. *Diaz*, 865 F.3d at 177. The "clear answer" is that under section 44-53-370(a)(1), manufacture, distribute, dispense, deliver, and purchase are *means*, not elements.

As the Government and the PSR point out, the Fourth Circuit reached the opposite conclusion in two unpublished decisions: *United States v. Vinson*, 340 F. App'x 882 (4th Cir. 2009) and *United States v. Marshall*, No. 16-4594, 2018 WL 4150855 (4th Cir. Aug. 29, 2018). (ECF No. 39-2 at 3–6; ECF No. 45 at 1–7.) The Government and the PSR also cite *United States v. Rhodes*, 736 F. App'x 375, 379 (4th Cir. 2018), *United States v. Sulton*, 740 F. App'x 45 (4th Cir. 2018), and the Fifth Circuit's decision in *United States v. Rodriguez-Negrete*, 772 F.3d 221 (5th Cir. 2014), as support for their position. (*Id.*) *Vinson* does not analyze the means/elements question and was decided before *Mathis*. *See Vinson*, 340 F. App'x at 883 ("Vinson claims that because the South Carolina statute under which he was convicted also criminalizes the purchase of drugs, the district court needs to look beyond the statute to evaluate Vinson's conduct. We disagree. Vinson actually pleaded guilty to an offense that is enumerated in § 924(e)(2)(A)(ii)."). *Rhodes* and *Sulton* analyze other South Carolina drug statutes, not section 44-53-370. *See Rhodes*, 736 F. App'x at 379 (assuming, for purposes, of the appeal that S.C.

Code Ann. § 44-53-445(A) (2003) is divisible); *Sulton*, 740 F. App'x at 46 ("We conclude that [South Carolina Code § 44-53-375(B)] is divisible because, on its face, it criminalizes multiple, different actions taken with respect to methamphetamine, and nothing in the statutory text states or suggests that the enumerated actions are alternative ways to commit an element of a single offense rather than alternative offenses."). And, the Fifth Circuit's decision in *Rodriguez-Negrete*, in addition to not being binding on this court, does not directly answer the means/elements questions and was also decided before *Mathis*. *See Rodriguez-Negrete*, 772 F.3d at 227 ("Because the statute of Rodriguez's conviction criminalizes drug distribution offenses as well as the mere purchase of drugs—the latter not necessarily a drug trafficking offense—the statute alone would not be sufficient and determinative to support Rodriguez's sentence. Under the modified categorical approach, we may determine the offense of Rodriguez's conviction by consulting a limited class of documents approved by the Supreme Court in *Shepard v. United States*."). Therefore, instead of reviewing all of those decisions, this court will only examine the Fourth Circuit's decision in *United States v. Marshall*, No. 16-4594, 2018 WL 4150855 (4th Cir. Aug. 29, 2018), as it was decided after *Mathis*, provides the most extensive analysis of the divisibility question, and addresses section 44-53-370(a)(1).

The Fourth Circuit in *Marshall* began by finding,

> The South Carolina statutes on their face govern a broader range of conduct than the ACCA or the career offender guideline by prohibiting the mere "purchase" of narcotics. Accordingly, if the statutes were indivisible, the state offenses would not categorically satisfy the definition of "serious drug offense" in the ACCA or "controlled substance offense" in the career offender guideline.

*Marshall*, 2018 WL 4150855, at *8. However, the court "conclude[d] that South Carolina Code §§ 44-53-370 and 445 set forth alternative elements, and that, therefore, the statutes are subject to review under the modified categorical approach." *Id.* In reaching this conclusion, the Fourth

Circuit "consider[ed] how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are instructed, and the manner in which South Carolina courts treat convictions under these statutes." *Id.* However, this is a departure from *Mathis*. In *Mathis*, the Supreme Court found it particularly important to the divisibility analysis whether the statutory alternatives carry different punishments. *See Mathis*, 136 S. Ct. at 2256 ("Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). As explained above, under section 44-53-370, manufacture, distribute, dispense, deliver, and purchase *do not* carry different punishments, which the *Marshall* court did not consider in its analysis. *See Marshall*, 2018 WL 4150855, at *8. Moreover, citing *Watson*, the *Marshall* court found, "Courts in South Carolina treat the *purchase of a controlled substance as a distinct crime from possession with intent to distribute* under Section 44-53-370." *Id.* at *8 (emphasis added). As explained above, this court finds that under section 44-53-370(a)(1), manufacturing, distributing, dispensing, delivering, or purchasing a controlled substance is a distinct crime from possessing a controlled substance with the intent to manufacture, distribute, dispense, deliver, or purchase that controlled substance. Thus, this court also agrees that, "Courts in South Carolina treat the *purchase of a controlled substance as a distinct crime from possession with intent to distribute* under Section 44-53-370." *Id.* (emphasis added). However, while *Watson* confirms that *purchasing a controlled substance* is a distinct crime from *possessing a controlled substance with the intent to distribute it*, *Watson* does not answer whether *purchasing* a controlled substance is a distinct crime from *distributing* a controlled substance, or *manufacturing* a controlled substance, and so on, and so on. *See Watson*, 2013 WL 8538756, at *2 ("South Carolina law regards simple possession as a lesser-included offense of PWID[, possession with intent to distribute,] heroin but not of purchasing

heroin.  By requiring the jury to address PWID heroin and purchasing heroin separately, the trial court ensured the jury (1) understood the lesser-included relationship existed only between simple possession and PWID heroin and (2) examined the evidence of purchasing heroin separately.").

Additionally, the *Marshall* court relied heavily on prosecutorial charging decisions and jury instructions in determining whether the alternative statutory phrases in section 44-53-370 are means or elements.  *See Marshall*, 2018 WL 4150855, at *8.  The Supreme Court in *Mathis* held that sentencing courts should only take a peek at the record "if state law fails to provide clear answers."  136 S. Ct. at 2256.  *See also Diaz*, 865 F.3d at 177 ("The government argues that under *Mathis* . . . we should 'peek at the record' to determine whether the statute is divisible. However, the Supreme Court only recommends this in the absence of 'clear answers' from case law and other sources.").  While the Fourth Circuit in *Diaz* appears to consider treatises and jury instructions as appropriate "sources" to consider before peeking into the record, *Diaz*, 865 F.3d at 177, the Supreme Court in *Mathis* identified jury instructions as a quintessential "record" document along with indictments.  *See Mathis*, 136 S. Ct. at 2256– 57.  Moreover, in answering the divisibility question, *Mathis* and *Descamps* arguably limit any excavation beyond case law and the statute at issue to the record *in the defendant's case*.  *See Mathis*, 136 S. Ct. at 2256 ("And if state law fails to provide clear answers, federal judges have another place to look: *the record of a prior conviction itself*. . . . [T]he *record* would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. . . .  Of course, such *record materials* will not in every case speak plainly . . . .  But between those documents and state law, the kind of indeterminacy should prove more the exception than the rule." (emphasis added)); *Descamps*, 570 U.S. at 272 ("A prosecutor charging a violation of a divisible statute must generally select

the relevant element from its list of alternatives. And the jury, as instructions *in the case* will make clear, must then find that element, unanimously and beyond a reasonable doubt. . . . A later sentencing court need only check *the charging documents and instructions . . . to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he* committed the ACCA-qualifying crime." (emphasis added) (footnote omitted)). Thus, the appropriateness of considering sources outside the record of the defendant's prior convictions is arguably an unsettled question.

The *Marshall* court also relied on two South Carolina cases in finding that (1) "South Carolina prosecutors . . . charge one of the listed statutory alternatives in state court indictments," and (2) "South Carolina juries typically are instructed to find one of the alternative elements listed in the statute beyond a reasonable doubt." *Marshall*, 2018 WL 4150855, at *8. However, other South Carolina cases indicate the exact opposite. *See, e.g.*, *Cutner v. State*, 580 S.E.2d 120, 122 (S.C. 2003), *overruled on other grounds by State v. Gentry*, 610 S.E.2d 494 (S.C. 2005) ("The indictment read: That ANTOINE CUTNER did in Richland County on or about March 30, 1998, distribute, sell, purchase, manufacture, or unlawfully possess with intent to distribute, a controlled substance . . . ."); *State v. Gill*, 584 S.E.2d 432, 434 (S.C. Ct. App. 2003) ("Gill's indictment for distribution of crack cocaine alleged that he 'did distribute, dispense, or deliver a quantity of crack cocaine . . . or did otherwise aid, abet, attempt, or conspire to distribute, dispense, or deliver crack cocaine, all in violation of Section 44-53-375 . . . .'"); *Roberts v. State*, 757 S.E.2d 744, 748 (S.C. Ct. App. 2014) ("The record before us contains a copy of a true-billed, unaltered trafficking indictment . . . with the following charging language in the body of the indictment: That Ronald Irving Roberts did in Charleston County on or about March 4, 2003, knowingly sell, manufacture, cultivate, deliver, purchase, or bring into

this State, or did provide financial assistance or otherwise aid, abet, attempt, or conspire to sell, manufacture, cultivate, deliver, purchase, or bring into this State . . . .").  Thus, if anything, South Carolina case law does not provide a clear picture as to how prosecutors "typically" charge the statutory alternatives in section 44-53-370(a)(1) or how South Carolina juries are "typically" instructed to find those statutory alternatives beyond a reasonable doubt.  To make such a determination would require a comprehensive review of actual indictments and jury instructions, as opposed to quotes in cases, which may be why *Mathis* instructs sentencing courts to start with case law and the statute itself and then, if those sources fail to provide clear answers, consult the record of the prior conviction of the defendant before the sentencing court.  *See Mathis*, 136 S. Ct. at 2256 ("Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.  And if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself.").  What is more, the record of Defendant's prior convictions in this case, *and Marshall*, belie the Fourth Circuit's conclusion of what is typical in South Carolina, as both of the indictments for Possession with Intent to Distribute Marijuana that Defendant pleaded guilty to listed all section of 44-53-370(a)(1)'s statutory alternatives.  (*See* ECF No. 39 at 9 ¶ 29 ("The Indictment titled 'Possession with Intent to Distribute Marijuana' charged [Defendant] did in Richland county on or about June 19, 2001, manufacture, distribute, dispense, deliver, purchase or aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver or purchase, or possess with intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance to wit: Marijuana."); ECF No. 39 at 11 ¶ 31 (same as ECF No. 39 at 9 ¶ 29 except for the date, which is "October 14, 2001").)  *See also* Reply Brief of Appellant at 15, *United States v. Marshall*, No. 16-4594, 2018 WL 4150855 (4th Cir. Aug. 29, 2018) (stating that according to the PSR, the

indictments for both of Marshall's Possession with Intent to Distribute convictions listed all of the statutory alternatives).

Finally, because *Marshall* is an unpublished opinion, it is not binding on this court. *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 433 n.6 (4th Cir. 2012) ("Unpublished decisions are also not binding upon us."); *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) ("[W]e ordinarily do not accord precedential value to our unpublished decisions. Indeed, those decisions have no precedential value, and they are 'entitled only to the weight they generate by the persuasiveness of their reasoning.'" (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n. 7 (4th Cir. 1981))); *United States v. Ruhe*, 191 F.3d 376, 392 (4th Cir. 1999) ("Unpublished opinions are not binding precedent in this circuit."). Accordingly, none of the Fourth Circuit's unpublished decisions relied upon by the Government and the PSR mandate how Defendant's objections should be resolved. This court remains convinced that section 44-53-370(a)(1) sets forth alternative means and, therefore, must apply the categorical approach.

C. **Application of the Categorical Approach**

As previously explained, under the categorical approach, the court "compar[es] the elements of the underlying offense to the federal definition." *Walker*, 858 F.3d at 198. If the elements of the underlying offense "sweep[] more broadly" than the federal definition, "a conviction under that law cannot count" as a controlled substance offense. *Descamps*, 570 U.S. at 261. Because section 44-53-370(a)(1) prohibits the "purchase" of a controlled substance, the statute is broader—criminalizes more conduct—than U.S.S.G. § 4B1.2. *Compare* SU.S.S.G. § 4B1.1(a) *with* S.C. Code Ann. 44-53-370(a)(1). *See also Marshall*, 2018 WL 4150855, at *8 ("The South Carolina statutes on their face govern a broader range of conduct than the ACCA or the career offender guideline by prohibiting the mere "purchase" of narcotics. Accordingly, if

[South Carolina Code section 44-53-370(a)] w[as] indivisible, [it] would not categorically satisfy the definition of . . . 'controlled substance offense' in the career offender guideline."). (*See also* ECF No. 45 at 2 ("The Government conceded that due to the 'purchase' language in § 44-53-370, the statute is indeed overbroad."). Under these circumstances, "the categorical approach needs no help from its modified partner." *Descamps*, 570 U.S. at 265. Therefore, because section 44-53-370(a) of the South Carolina Code Ann. (2002) is broader than the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2(b), Defendant's convictions under that law cannot give rise to an enhanced sentence under U.S.S.G. § 4B1.1(a). Accordingly, the court sustains Defendant's first objection. Because the modified categorical approach does not apply, the court overrules Defendant's second objection—that sentencing sheets are not appropriate *Shepard* documents—as moot.

### III. CONCLUSION

The court sustains Defendant's first objection and orders the United States Probation Office to submit a new offense level computation in accordance with this Order and Opinion. As a result of sustaining Defendant's first objection, the court overrules Defendant's second objection as moot.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

December 14, 2018
Columbia, South Carolina